This is a case of People v. Justin Walker 210508. Our procedure is, well first I'll address it's Justice Nate House and Justice Cynthia Cabb and myself Justice James Fitzgerald Smith. Our procedure is that we let the appellant go first and makes a presentation, usually without us interfering in asking questions unless you get off a beaten path. Then we ask questions and that's for say 12 to 15 minutes. Then the appellee gets the same opportunity and we ask questions and then the appellant closes. With that you may proceed. Samuel Steinberg I am Samuel Steinberg of the Office of the State Appellate Defender representing Appellant Justin Walker. Mary Christa, three minutes in rebuttal. Mary Christa Okay. Samuel Steinberg Yeah. Council, Court, may it please the court. This court should reverse and remand for second stage post conviction proceedings because in this appeal of a first stage post conviction petition Mr. Justin Walker has stated the gist of a non-frivolous arguable constitutional violation. Whether this court considers his first argument that his arrest pursuant to an investigative alert in which the Chicago Police decided to find probable cause and not go to a warrant states the gist of a constitutional violation or this court considers his second argument that his 30-year sentence without the opportunity for early release which he has to serve every day violates the state's constitutional. Mary Christa Let me ask you just one. I should have asked you before you started. We're looking at Bass and we're saying in the plain language of the court it says, if I can find it. Well, I can't find it right now. Anyway, basically what it said is that they did not make a constitutional ruling on investigative alert. They just did not decide that. So you do not have that is the prime constitutional issue in this case. So it's my theory that Baswell is still the only case on the books that addressed it. So with that in mind, you go ahead. Your Honor, in addition to Bass, recently in People v. Smith and in People v. Rush, the First Division has held that an arrest pursuant to investigative alert violates Illinois search and seizure clause. Yes, in those cases the court expressly disagreed with Baswell cases. All my client needed to do at the first stage of post-conviction petition was state the gist of a constitutional claim. There is currently conflict, direct and express conflict between decisions of this appellate court and this Ann Indulsi, which was argued a few weeks ago, I watched the OA, that the issue is currently pending before the Illinois Supreme Court. That is an older case. That was when Bass was good law and Baswell had not been ruled on. So I just point that out to you. And even so, the case is kind of, I don't know, it's just a strange case. I think that they're not going to do anything with it. When they look at it, go ahead. Well, I don't know how the, I cannot predict how the Illinois Supreme Court will decide Dulce. I do know that according to this court's opinion and Dulce, Dulce was decided on both of finding that the trial court originally followed that court case, that there was no probable cause and that an arrest pursuant to, they did reach constitutional issue, that an arrest pursuant to an investigative alert was unconstitutional. That was based on a plain reading of plain reading and the history of the Illinois Constitution, which expressly, you know, a constitution of a, of 1970, sorry, I almost said the 1870 constitution requires an affidavit or warrant. According to the reasoning in cases such as which revived Bass during the pendency of people and Rush that requires the Illinois police department to go to a judge to get a warrant. And here let's look at the facts of this case. Detective Cordero Lando found out from Lakeisha Royal who identified Mr. Walker as a potential Mayfield boy on April 4th, April 5th, really early morning of April 5th. They got a little bit of corroboration from the janitor that something happened around April 5th. The detectives went back and forth for like 10, 11, 15, 14 days to try to get, to try to get, locate Mr. Walker who was a 17 year old defendant. And instead of trying to, and instead of going to a judge to get a magistrate to get a probable cause finding, Detective Cordero after 11, 12 days, 13, I'm not being able to find my client decides to issue an investigative alert. An investigative alert without, we call these investigative alerts, but they're warrants. They're warrants without going to a judge. Detective, I found it interesting that during the suppression hearing, when Detective Lando is asked about the, what an system where we alert other, our agency and other agencies, that's a probable cause to arrest someone. That's a warrant. And it's a warrant without a finding by one of Chicago, by one of, by one of the circuit judges. And they had sufficient time. This isn't like a shoplifting case or a problem. This isn't like a shoplifting case or a case where, you know, someone's actively armed and dangerous and might flee. They got time to go to a judge. They got over 48 hours. And that's our, and I mean, based in, basically this is a simple case on this first issue on, because there's currently conflict in the law and the, and the confession was vital to the state's case. You really have to reverse and remand. Importantly, the state pursued a felony robbery, felony robbery theory, and they use Walker's confession that he grabbed $23 off the ground from the victim during the robbery to pursue a felony murder conviction. They argue this during closing arguments, during the jury instructions, they said, if you find that a robbery was going in place, you don't have to find the other three issues of intent. The confession here, which is always a powerful piece of evidence was even more vital than the confession than this evidence that would have been tamed from the fruits of the poisonous tree in cases such as Smith and Rush. I can't hear you, Justice House. Can you unmute yourself? The Supreme Court has instructed us to avoid deciding constitutional issues when we can decide a case on other grounds. The issue that you raised today could not have been raised in direct appeal. And if he was going to raise it in a post-conviction petition, shouldn't he have raised it within a limitation period? Can't we just say, well, you know what, you didn't file it on time and we don't even have to get to the constitutional question, just like our court tells us to do, to avoid. This is a raw appeal from a first stage dismissal and the timeliness of a petition, of a claim isn't at issue at this stage. Ideally, if you're looking, if a cause or prejudice or were to apply, you look at the subsequent, it wasn't clear by the Illinois Supreme Court that this was a viable constitutional claim until we got Bass. Bass was though based on the plan. There was no new law. It was just a different argument made. It was no new law. The constitution remained the same. It's not like there was a new statute passed. He could have raised this. Arguably, he could have raised this. However, there is a clear violation. And if he couldn't raise it, then it's his own counsel that is ineffective for failing to raise this viable claim. As we see by the Smith's analysis of cases such as Lippman, McGurn, Elias, all these cases show basis and a preference for a warrant requirement, for an affidavit warrant and a magistrate's funding as opposed to the executive branch, the police department, deciding probable cause on their own when they have clearly more than 24, 48, 72, however many hours they had in this case and days to make a decision. I would like to move on to other questions on the arrest issue before I move on. Do you have any questions? No. Well, then move on to the other one. Okay. Justin Walker stated an arguable basis that his 30-year sentence without the opportunity for early parole, without the opportunity to earn good time credit or even parole violates Illinois' proportionate penalties clause. And I'm going to direct this court to the just plain language of the statute, because there's an argument, the state has made an argument that, oh, it doesn't apply to a non-de facto life sentence. The plain language and the history of the proportionate penalties clause refutes that. It says all penalties shall be determined both in according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. When I read all penalties, a plain reading of all penalties applies to all penalties. It doesn't impose a requirement that only a person serving over 40 years. The state relies on cases such as Buffer and Dorsey to say that the principles of Miller and the Eighth Amendment only apply to de facto or more de facto life sentences. However, the Illinois proportionate penalties clause is more expansive than the proportionate penalties clause. Furthermore, with this clause or with both the Illinois penalties clause as well as the circumcision clause, neither clause contains a requirement that all decisions construed in this clause must be read in conformity with decisions of the United States Supreme Court. None of those are entirely in lockstep with the decisions this court and Illinois courts have deviated. Importantly, it includes a provision that says restoring the offender to useful citizenship. Courts have interpreted that to mean rehabilitative potential. Dorsey's emphasis in Dorsey, the Illinois Supreme Court expressly rejected a defendant's argument that that good time credit doesn't show rehabilitative potential or show their ability to function in the They based it on U.S. Supreme Court cases that it not only creates a safer prison, it creates incentive for the defendant to perform that shows that he can behave once he's released. It's similar to parole but or similar to the incentives of probation parole but allows him to show that he's a useful citizen while in prison. And here, the record shows that Walker is one of those people that he can rehabilitate. Yes, he's not serving a de facto life sentence, but that creates even more incentive for him to have the ability to earn a good time credit or parole in 20 years. Notably, if a 17-year-old was sentenced today under Illinois law after June 1, 2019, they'll be eligible for a parole hearing in 2025 years. Walker does not have that ability. He's kind of in that middle ground where truth in sentencing applies to him but not some defendants after him and not some defendants committed the same crime before him. And there's really the restoring the citizenship. He can't do that. And he has the ability to move on from his 10th grade education, his involvement in a gang. He was involved in a gang. If you look at the mitigation packet too, there's letters of support from his family and friends saying that he has the ability. He's a caring individual. Also, Charles Levy of the African American Enrichment Program said he possesses a lot of potential. Based on these facts, he's presented an arguable basis that his sentence violates proportionate penalties clause. With either of his claims, at the third stage of post-conviction petition, all I needed to do is state a gist of a constitutional violation. Even if there's Justice House's opinion, where there's a conflict in appellate court decisions on issue, defendant has stated a gist of a constitutional claim and remand is required for second stage proceedings. How do you get around Dorsey, Buffer, and Briggs, especially Dorsey and Buffer? Dorsey and Buffer were cases decided only on Eighth Amendment grounds. In fact, Dorsey, I think Dorsey found the proportionate penalties clause forfeited because that claim was not raised in the appellate court. They never reached a proportionate penalties clause argument. They never reached a question of whether the proportionate penalties clause is more expansive. The same thing in Buffer. That was only decided on Eighth Amendment grounds. Yes, Walker sentenced 30 years. That means we know he's not locked away. We know he's going to get released. We know he has to be restored to useful citizenship. According to Dorsey, the reasoning in Dorsey, especially the good time credit provides incentive for rehabilitative potential. It shows that they can conform. In fact, it really fulfills the Illinois constitutional goal of 1970 of restoring a person to useful citizenship. He should not be deprived, regardless of the severity of the crime. The Illinois Constitution requires at least some way that this sentence include a provision to give the defendant an opportunity to show that he's a useful citizen. Are there any more questions? Questions? I have none. Thank you, Your Honors. All right. The appellee can proceed. Yes, Your Honor. May it please the court. Gerard Richard Birch Jr. on behalf of the people of the state of Illinois. This court should affirm the circuit court's judgment because this court has consistently recognized that our search and seizure clause is interpreted in lockstep with the Fourth Amendment, which allows warrantless arrests in public so long as there's probable cause. Multiple panels of this court have already rejected the notion that our search and seizure clause provides greater protections from unreasonable searches and seizures than our Fourth Amendment. And there is absolutely no historical evidence in the Illinois Constitution that supports any deviation from these rock-solid legal principles that multiple panels of this court have already embraced. The supported by affidavit language in the Illinois Constitution merely dictates how arrest warrants are to be obtained and not when an arrest warrant must be obtained. In other words, the fact that a warrant application must be supported by an Contrary to defendant's assertion, the supported by affidavit language has no bearing on the central issue in this case, that is, whether probable cause is the only requirement to effectuate a lawful arrest. This court, through its well-reasoned decisions in Braswell, Thornton, Little, and Palem, have already determined that probable cause is the only condition precedent to effectuate a lawful arrest. In fact, all those cases stand for the proposition that warrantless arrests pursuant to investigative alerts are constitutional, so long as those investigative alerts are supported by facts that gave rise to probable cause. Bass and Smith that held to the contrary were outliers on the issue and were wrongly decided because the 1970 Constitution never provided our citizens with additional protections against unreasonable searches and seizures beyond those already provided by the Fourth Amendment. That fact is evident where the drafters expressly deviated from the lockstep doctrine when it provided our citizens with additional protections beyond the Fourth Amendment against the use of eavesdropping devices and of our search and seizure clause. Even assuming the possibility that the Illinois Supreme Court in Dossie takes a 180-degree turn from the Braswell line of cases... I'm going to interrupt you. There is no 180-degree turn. The Supreme Court in Bass never reached the constitutional issue. I'm sorry. Well, correct. Correct, Your Honor. Assuming the Supreme Court in Dossie embraces the Braswell... excuse me, rejects the Braswell line of cases and embraces Dossie's interpretation, that alone is not a legal basis to proceed to second stage. The more appropriate remedy is for defendant to file a PLA should this court reject his argument as the people urge it to do or ask this court to hold its decision in advance until Dossie is decided. As for the second issue, the rehabilitative goal of the proportionate penalties clause is not a mechanism that suggests that juveniles are constitutionally entitled to reduce their non-de facto life sentences through earning good conduct credit. In fact, this court has already disposed of defendants' proportionate penalties concerns as established through Brakes, Banks, Watson, and Johnson, all of which rejected as applied to challenges from juveniles who received sentences of 40 years or less, or in other words, juveniles who received non-de facto life sentences. Moreover, as argued in our brief, the Illinois Supreme Court in Dossie solidified this court's precedent on the issue, finding no constitutional defects in any sentence imposed upon a juvenile so long as that sentence offered the juvenile the opportunity to demonstrate maturity and to obtain release in 40 years or less. As such, it logically follows that defendant's 30-year sentence, by virtue of the fact that it is not a de facto life sentence, provides him the opportunity to demonstrate maturity while in prison. There's nothing in the Truth in Sentencing Act sentencing schemes that prevents defendant from rehabilitating himself while in prison. And while Dossie did acknowledge that good conduct credit encourages rehabilitation, it never held that access to good conduct credit for juvenile convicted of first-degree murder was the only way to achieve that goal. In fact, to do so would be and if defendant wants such a finding, he should seek it directly from the legislature and not this court. If there are no questions for the reasons stated in our brief and our arguments today, the people ask this court to affirm defendant's conviction and sentence. Any questions, Justice House or Justice Cobb? I just want to make certain I understand clearly how an investigative alert comes about. How is it sought and how is it granted? Your Honor, I'm not sure the process in which an investigative alert is. There's no indication from the record how they went through the process of issuing the investigative alert. The only thing that's clear from the record is that they had probable cause to do so as this appeal. There was no testimony in the record as to the process in which the investigative alert was issued. So is it conceivable that officers who are assigned a case and are investigating present to an internal body of let's say CPD and says we have this that or the other, we wish to have an investigative alert issued? I mean, how does that happen? I mean, we know how we get a warrant. We go knocking on a judge's door and we present an affidavit and answer questions and the judge says yay or nay. But I'm not understanding how we get an investigative alert, not suggesting that we wouldn't have probable cause whether we have it or not. I want to know how does it come about that you get an investigative alert? Your Honor, I'm not privy to the process. I can only speak on what happened in this case. And it was the officer issued the investigative alert not after a royal who was the first witness made the identification, but only after her identification was corroborated by the second witness, which was JB, that the investigative alert was issued. So I'm not privy to the process. The people just want to focus on the fact that, well, I guess it's not even an issue because there was probable cause to support that, but we're not privy to the fact so. When does probable cause come in? I'm sorry? You're saying probable cause existed, but is that before the alert? Correct. How do we know there was probable cause? Because royal made an identification of defendant, but she couldn't make a full identification of defendant on the fourth. But on the 11th, royal's identification was corroborated by that of JB's, who was also a witness. So it was clear that probable cause supported the issuance of the investigative alert. So we usurp the role of the judge because we have a witness who testifies to a detective about what he or she saw, and that's sufficient. We don't need a judge. Well, we still have to, we have safeguards or somewhere on the back end where defendant will go before a judge and maybe find a hearing of probable cause on the back end, and it will be, the case will be thrown out or dismissed should that judge not find probable cause. But isn't it the better process to determine probable cause prior to the arrest? I mean, we're talking about liberty interests here. Well, it could be, but the bottom line is, is it constitutional? Is a warrant required to effectuate a lawful arrest? And as the constitution stands, based on the 1970 drafters, it's interpreted in lockstep with the fourth amendment, and no warrant is required to effectuate a lawful arrest so long as there's probable cause to do so. Just generally never a warrant? No exceptions to the, there are, are there exceptions to the warrant requirement. But in here, in this case, we didn't even need a warrant when you have two eyewitnesses who identified defendant as a perpetrator. And it was only after the first witness's testimony, excuse me, not testimony, but identification was corroborated that the investigative alert was issued. Is there exigency here such that no warrant could have been obtained? One could say so because during the time that defendant was absent from the crime scene, as well as absent from his home, that could have indicated, I don't want to speculate, but that he had skipped town or was a flight risk. I think some cases alluded to those possibilities being an exception to the warrant requirement. It's just not enough evidence in this record to make that determination. Aren't we always going to be behind the eight ball in these trying to figure out what was available to whom and when, as opposed to if we had simply gone before a judge, we'd know temporally what happened when and who's saying what to who? Oh, well, I guess, Your Honor, that could be what the police report, maybe we can view the police reports and evaluate what was said, who it was said to document the but just the bottom line is here is the people's position that a warrant was not required constitutionally. Why is there any requirement at all for any arrest to have a warrant? You know, if it's not made, if nobody's arrested at home, you would take that out of the mix, but the police can arrest anybody without a warrant anywhere, except their home, right? Well, if they have probable cause, according to the Fourth Amendment, yes. Then we don't need a Fourth Amendment. I guess my concern is, do we have by ordinance or however investigative alerts came into being, do we have by ordinance the ability to kind of like superfluous any constitutional protection? I mean, that Fourth Amendment language and, you know, in the language in the Illinois Constitution, that language exists there for some reason. I mean, what are we giving up here? Are we creating another exception to the warrant requirement by sanctioning investigative alerts? Um, I wouldn't, I wouldn't say we'll be creating an exception to the warrant requirement. Constitutionally, if the only thing that's required for an investigative alert is probable cause, I'm sorry, arrest and a lawful arrest, then the fact that an investigative alert is issued to probable cause exists to make an arrest, then the investigative alert doesn't make a difference at all. Um, that's our position. Can you give me a sense of, um, the length of time between just generally an arrest and a probable cause hearing? Your Honor, I have no, I have, I don't know. Uh, I have no practical knowledge in that, particularly. I've never done preliminary hearings or anything like that, so I'm not sure. Okay. Thank you. I have nothing else, Justice Smith. All right. The appellant can proceed. It please court justices. Um, Mr. Birch, um, the state's argument was in disagreement with, um, outlier cases such as Smith, Rush, or even the trial court's decision in Dulce doesn't, um, acknowledges that there's a conflict in opinions. It argues that this is a non-frivolous claim. Um, it, it acknowledges that there's conflict in opinions. There's a difference in justices. I used to be on the other side of this. I used to work for the state of Florida, and when there's a conflict in, in case law, um, it's, it's really non-frivolous. Um, notably, counsel has argued that this court, or he wasn't privy to the facts of how the, how the Chicago Police Department develops an investigative alert. The suppression hearings here, as well as the trial evidence show Detective Coro, Cordero originally tried to do a by-bust operation when he took over the case, I think in March, and they, they arrested Royal. They found Royal, Royal identified the defendant. Um, then after some time, after maybe getting some cooperation, Detective Cordero, without going to a judge, a Chicago police officer, without any approval, could unilaterally decide that there's probable cause for an arrest without, without a case being half-pursued. That's in the record. I, um, this is, this court, I've seen this in similar cases as well, detectives issuing that. But this was only a week and a half, right? Only a week and a half. That's a long time. Um, that's a long time. I mean, this is not six months. You know, what's a reason, you know, even Smith says 24, 48 hours. I mean, I think you look at all of these and say a reasonable period may vary from the facts of the case. It may vary. It's, in this case, it was actually unreasonable for the detective to, to wait 72, 80 hours, 90 hours, over 48 hours. They're looking for three or four suspects for murder. And a warrant, not only invest, not only investigative alert, might only notify to Chicago police department. A warrant notifies the Chicago police department, um, Cook County Sheriff's office, which is another jurisdiction. Um, we have the Illinois state patrol. It might even notify, um, it notifies people from cases out of state. Um, let's say they're stopped in or even Florida. And when they do a CODIS check, it would notify that the state's brief argued that investigative alert is efficient. No, it's a way of usurping. When I see the Chicago police's use of investigative alerts, as well as a recent federal court opinion side of my reply brief about a lack of oversight for the system, it doesn't seem like it's a way of, it seems like a um, and that, and invading the separation of powers as well. Um, for the, and because there's conflict and yes, and we argue that Cabela's, um, has to be read expansively. That requires more than just a strict lockstep analysis, but this court need not go into a deep analysis. There's on this issue. And the state suggests a PLA, um, waiting for, you know, to affirming a PLA, there's still conflict and that's just inefficient judicial efficiency. We better for this court to remand this case for further proceedings. We don't know when Dorsey's get decided, but whenever Dorsey gets decided, then the court below can decide how it applies to that case. I mean, Dorsey gets decided and how it applies, whether retroactively and during second stage proceedings, defendant has account, defendant has access to counsel. It's much more judicial efficient and defend and require defendant who has raised a bass claim, who has raised a gist of a constitutional claim to have to refile his appeal or not appeal a, um, you know, clearly this conflict, whether outliers or not, whether, um, states suggest of a constitutional claim. And we also stand by our proportionate penalties clause argument. If there are no couldn't be argued that, you know, your client was given Miranda warnings after he was picked up on the alert. Um, could they argue that the arrest that it was the, there was an illegal rest was attenuated by the Miranda warnings, such, such facts about the attenuation of tape would really have to be decided, um, during the evidentiary hearing or as more facts about the, um, his Miranda could be brought out. Notably my client was a 17 year old juvenile. He had a Merrill marijuana addiction. He also was taking antidepressants, including Zoloft at the time. Um, it was under intense pressure by police to reveal information. Um, so generally for attenuation of taint hearing, even if this court agreed, that's usually the remedy. If this court agrees that there's a violation. So such facts would have to be fleshed out with an exact timeline when his arrest was what went on during his arrest, how he was taken to the police station circumstances of the interrogation and his cooperation. And that's better left for the trial court to decide the record because the record, um, shows a connection, right? At least provides an arguable basis of taint. So justice Fitzgerald, do you have a question? No, I'm anybody else got any nothing? No, thank you. All right. Well, both of you, I thank you very much. This is an unusual case where we went on and ask questions for quite a period of time. So we appreciate your preparedness. Both of you did an exemplar job, um, sound sounding and responding to everything we asked. So I thank you both very much.